UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RYAN MANNING, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| WHOLE FOODS MARKET GROUP, INC., | * | Civil Action No. 21-cv-10833-ADB |
| JOHN P. MACKEY, DAVID J. FILIPPONE, | * | |
| and GREG PALLADINO, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Ryan Manning ("Plaintiff") brings federal and state law claims against Whole Foods Market Group, Inc. ("Whole Foods"), John P. Mackey ("Mackey"),[1] David J. Filippone ("Filippone"), and Greg Palladino ("Palladino," together with Whole Foods and Filippone, "Defendants") alleging that a policy that requires all customers to wear a mask while shopping at Whole Foods' stores violated his rights. [ECF No. 1 ("Compl.")]. Defendants moved to dismiss the complaint. [ECF No. 20]. For the reasons set forth below, Defendants' motion is GRANTED.

---

[1] Mackey has not entered an appearance in this action and does not join in Defendants' motion to dismiss, but, as described in Section III. I infra, sua sponte dismissal of the claims asserted against Mackey is warranted here.

I.      BACKGROUND

   A.     Factual Background

The following facts are taken primarily from the complaint, [Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice."  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

In early 2020, the spread of the highly contagious novel coronavirus ("COVID-19") upended daily life and led businesses to take steps to prevent its spread.  In response to the COVID-19 pandemic, Whole Foods instituted a policy that required all customers to wear face coverings while shopping in order to protect employees, shoppers, and communities from COVID-19 (the "Mask Policy").  [ECF No. 21-1 at 19–21].  Whole Foods provided masks to those customers who did not have them and also allowed customers with medical or other exemptions to wear a face shield or undergo a brief medical screening in lieu of wearing a mask. [Id.].[2]

On January 4, 2021, when the Mask Policy was in place, Plaintiff entered a Whole Foods store in Dedham, Massachusetts without wearing a mask.  See [Compl. ¶¶ 1–2].[3]  Plaintiff

---

[2] In May 2021, Whole Foods revised the Mask Policy to allow fully vaccinated customers to shop in its U.S. stores without masks, although masks are still required in stores where there is a state or local mask mandate in place.  [Id. at 22–24].

[3] Unless otherwise noted, the Court cites to the paragraph numbers in the complaint's "Factual Allegations" section.

asserts that his religious beliefs prevent him from wearing a mask because he believes that masks "are part of a satanic ritual" and that "he cannot slowly commit suicide by lowering his immune system and depriving himself of oxygen." [Id. ¶¶ 52–54].

When Plaintiff entered the store, a staff member told him that he needed to wear a mask, but he refused, claiming that such a request was unconstitutional. [Compl. ¶¶ 2–3]. Eventually, Palladino and Filippone, who are alleged to be the "manager" and "head manager" of the Dedham store, approached Plaintiff and reiterated that, per store policy, he would need to wear a mask while shopping. [Id. ¶¶ 7–8]. After this exchange, Plaintiff exited the store and called the police. [Id. ¶ 13]. Officer John Rinn responded to Plaintiff's call. [Id. ¶ 14]. Plaintiff explained to him that his rights were being violated and he "wanted to make a citizen's arrest." [Id. ¶¶ 15–17]. At this point, Filippone offered to go shopping for Plaintiff, but Plaintiff refused. [Id. ¶¶ 18–19]. Plaintiff also rejected Filippone's offer to allow Plaintiff to shop if he underwent a health screening and temperature check. [Id. ¶¶ 23–24]. Plaintiff told Filippone that he had "no right to give Plaintiff a health screening." [Id. ¶ 24].

B.    **Procedural History**

On May 19, 2021, Plaintiff filed his eight-count complaint alleging that Defendants: (1) violated his First Amendment rights to freedom of speech and religion under 42 U.S.C. § 1983, (Count One), [Compl. ¶¶ 64–68]; (2) violated 18 U.S.C. § 242, (Count Two), [id. ¶ 69]; (3) discriminated against him in a place of public accommodation in violation of 42 U.S.C. § 2000a, (Counts Three and Five), [id. ¶¶ 70–74, 76]; (4) conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985, (Count Four), [id. ¶ 75]; (5) engaged in "unauthorized or unregistered practice of medicine" in violation of Massachusetts General Laws Ch. 112 § 6, (Count Six), [id. ¶¶ 77–79]; (6) harassed him, (Count Seven), [id. ¶¶ 80–84]; and (7) falsely

imprisoned him, (Count Eight), [id. ¶¶ 85–87]. On June 24, 2021, Defendants moved to dismiss the complaint for lack of standing and failure to state a claim. [ECF Nos. 20, 21]. Plaintiff opposed the motion on July 9, 2021. [ECF No. 22].

**II.     LEGAL STANDARD**

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). The party asserting federal jurisdiction has the burden of demonstrating its existence. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Dismissal is appropriate only when the facts alleged in the complaint, taken as true and given all reasonable inferences, do not support a finding of federal subject matter jurisdiction. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) (citing Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002)) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

Because Plaintiff is proceeding *pro se*, the Court must generously construe the arguments in his complaint and briefing. Bahiakina v. U.S. Postal Serv., 102 F. Supp. 3d 369, 371 (D. Mass. 2015) ("[A] document filed *pro se* is to be liberally construed. . . ." (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007))). However, a *pro se* litigant still must comply with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim. Muller v. Bedford VA Admin. Hosp., No. 11-cv-10510, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

### III.  DISCUSSION

#### A.  Article III Standing

Defendants first argue that Plaintiff has failed to establish that he has standing to bring suit. [ECF No. 21 at 8–9]. The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1st Cir. 1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560–61). Where, as here, the question of standing is based on the pleadings, Plaintiff "bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action," Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016), taking all of the facts (and any inferences that follow) in the plaintiff's favor, Gustavsen v. Alcon Lab'ys., Inc., 903 F.3d 1, 7 (1st Cir. 2018) (quoting Katz v. Pershing, LLC, 672 F.3d 64, 70–71 (1st Cir. 2012)).

To establish injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner, 823 F.3d at 731–32.

Defendants argue that Plaintiff fails to allege the "injury-in-fact" necessary for standing because he has not shown the invasion of any legally protected interest. [ECF No. 21 at 9]. As

the Court understands it, Defendants contend that Plaintiff cannot show that Defendants' implementation and enforcement of the Mask Policy violated his rights to freedom of speech or freedom of religion because Whole Foods is a private business not limited by the Constitution under the circumstances presented here. [Id.]. After considering these arguments, the Court finds that Plaintiff sufficiently alleges that Defendants' enforcement of the store policy resulted in a concrete injury to him and that he therefore has standing to sue.

With regard to state action, while the Court agrees that Plaintiff's claims are inadequately pled and ultimately must be dismissed under Rule 12(b)(6), Defendants do not clearly explain how their argument that Plaintiff's allegations are insufficient to show that a state actor violated his constitutional rights is relevant to standing. "The standing inquiry does not focus on the merits of the dispute. It focuses only on 'whether the litigant is entitled to have the court decide the merits of the dispute.'" City of Hope Nat. Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 228 (1st Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

### B. Count One: 42 U.S.C. § 1983

Plaintiff brings a claim under 42 U.S.C. § 1983 alleging that the January 4, 2021 incident infringed his First Amendment rights to freedom of speech and religion. [Compl. ¶¶ 64–68]. Defendants counter that any § 1983 claim must fail because they are not state actors. [ECF No. 21 at 12–13].

> Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State . . . .'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. §1983). Therefore, a plaintiff claiming a § 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal constitutional or statutory right. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 256 (1st Cir. 1994). If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal.

Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (footnote omitted).  "It is '[o]nly in rare circumstances' that private parties can be viewed as state actors." Id. (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).  The First Circuit looks to three tests to determine if "a private party fairly can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test."  Id. at 4–5.

It is undisputed that Whole Foods and its employees are private parties.  Plaintiff admits that Whole Foods is "a retail food marketplace," [Compl. ¶ 50], and he has not put forth any facts that allow for the plausible inference that Defendants are themselves governmental entities.  He has also failed to allege facts sufficient to show that Defendants could be considered state actors under any of the First Circuit's tests.  First, for the state compulsion test, "a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'"  Estades-Negroni, 412 F.3d at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  Although Plaintiff alleges that Massachusetts had a mask mandate and that it was a state custom to wear masks, he is not challenging the Massachusetts mask mandate and he has not alleged any facts to show that Massachusetts coerced Defendants into implementing or enforcing their own Mask Policy.

Second, "the nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'"  Estades-Negroni, 412 F.3d at 5 (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)).  The complaint is devoid of any factual

allegations that would suggest that the government was a joint actor in Defendants' decision to implement and enforce the Mask Policy.

Finally, under the public function test, "a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Id. (quoting Blum, 457 U.S. at 1005). "The public function test 'is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities.'" Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 544 (1st Cir. 2021) (quoting Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18-19 (1st Cir. 1999)).

Again, the challenged action is that Whole Foods implemented and, through its employees, enforced a store policy to protect the health and safety of its customers and staff. There are no allegations that would allow the Court to infer that Defendants, in enforcing their own internal policies, were performing a public function.

Absent any allegations to support state action, Defendants, as private parties, cannot be found liable under § 1983. Accordingly, Count One is DISMISSED.

### C.   Count Two: 18 U.S.C. § 242

Plaintiff brings a claim under 18 U.S.C. § 242, [Compl. ¶ 69], which provides that

> [w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both . . . .

18 U.S.C. § 242. Section 242 is a criminal statute and provides no private right of action through which Plaintiff could enforce it against Defendants. Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242

(the criminal analogue of 42 U.S.C. § 1983 . . . .)"); Bey v. Att'y Gen. of Massachusetts, No. 21-cv-11508, 2021 WL 4926164, at *3 (D. Mass. Oct. 21, 2021) ("[Section 242] does not provide a private right of action and cannot be used in a civil action . . . ."); Butler v. Karet, No. 21-cv-00981, 2021 WL 3633476, at *2 (N.D. Ohio Aug. 17, 2021) ("There is no private right of action under 18 U.S.C. §§ 241 and 242").  Accordingly, Plaintiff's claim under § 242 fails as a matter of law and Count Two is DISMISSED.

### D. Counts Three and Five: Title II of the Civil Rights Act, 42 U.S.C. § 2000a[4]

Plaintiff asserts that Defendants violated Title II of the Civil Rights Act ("Title II"), 42 U.S.C. § 2000a by denying him access to the Dedham store.  [Compl. ¶¶ 70–74, 76].  Defendants contend that any claims under Title II must be dismissed because Plaintiff failed to comply with the statute's notice requirements and he has otherwise failed to state a claim.  [ECF No. 21 at 9–11, 14–17].

Title II provides that "[a]ll persons should be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  Title II includes a notice provision, which states that

> [i]n the case of an alleged act or practice prohibited by this subchapter which occurs in a State . . . which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, *no civil action may be brought . . . before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority* . . . .

42 U.S.C. § 2000a-3(c) (emphasis added).

---

[4] Count Three and Count Five both seek relief under "Title II of the Civil Rights Act of 1964," with Count Three requesting compensatory damages and Count Five requesting injunctive relief.

Like Title II, Massachusetts General Laws Ch. 272, § 98 prohibits discrimination "in any place of public accommodation." Mass. Gen. Laws Ch. 272, § 98.  Massachusetts also authorizes the Massachusetts Commission Against Discrimination ("MCAD") to pursue claims of unlawful discrimination, including those raised under Chapter 272, § 98.  Mass. Gen. Laws Ch. 151B, §§ 5, 9.  Because there is a Massachusetts law prohibiting Defendants' alleged discrimination in a place of public accommodation and MCAD is authorized to "grant or seek relief from such practice,"  Plaintiff must first comply with the notice requirements under § 2000a-3(c) before bringing a claim under Title II.  See Hollis v. Rosa Mexicano DC, LLC, 582 F. Supp. 2d 22, 25 (D.D.C. 2008) (dismissing suit where plaintiff failed to provide notice to relevant District of Columbia agency); Dragonas v. Macerich, No. 20-cv-01648, 2021 WL 363852, at *3 (D. Ariz. Feb. 3, 2021) (similar); Dunn v. Albertsons, No. 16-cv-02194, 2017 WL 3470573, at *4 (D. Nev. Aug. 10, 2017) (similar).  Neither the complaint nor Plaintiff's opposition brief contain any allegations plausibly suggesting that he has provided notice to MCAD.  Accordingly, Counts Three and Five must be dismissed for failure to comply with the notice requirement.

Even if Plaintiff had complied with Title II's notice requirement, Counts Three and Five would still fail to state a claim for relief.

> To state a prima facie case of discrimination under § 2000a, a plaintiff must plausibly plead that he: (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodations; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class.

Drake v. Mitch Rosen Extraordinary Gunleather, LLC, No. 16-cv-00527, 2017 WL 1076396, at *2 (D.N.H. Jan. 17, 2017), R&R adopted, No. 16-cv-00527, 2017 WL 1066585 (D.N.H. Mar. 21, 2017) (citations omitted).  Plaintiff states that his religious beliefs prohibit him from wearing a

11

mask, but the complaint lacks any allegations suggesting he was treated differently than others who do not share his religious belief or that Defendants' actions were motivated by his religious beliefs. In fact, the complaint pleads that Defendants treated everyone the same and that everyone was subject to the Mask Policy. [Compl. ¶¶ 48–49 (stating that "Whole Foods policy requires everyone entering the store to wear a mask" and that "Whole Foods policy denies service to anyone who refuses to wear a mask")]. Therefore, Plaintiff has failed to allege facts to show that he was treated less favorably than others who did not share his religious beliefs. Counts Three and Five are DISMISSED.

### E. Count Four: Civil Conspiracy, 42 U.S.C. § 1985

Count Four of the complaint alleges that Defendants conspired to interfere with Plaintiff's civil rights under 42 U.S.C. § 1985.

> Section 1985 provides a remedy for acts of civil conspiracy in which two or more individuals conspire for the purpose of depriving another of rights or privileges accorded to them by law. See 42 U.S.C. § 1985(3). To plead an actionable claim under this statute, [plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is to deprive the plaintiff of the equal protection of the laws, describe at least one overt act in furtherance of the conspiracy, and show either injury to person or property, or a deprivation of a constitutionally protected right.

Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (internal quotation marks omitted). Construing the complaint and Plaintiff's filings extremely liberally, Plaintiff appears to be claiming that the Defendants, and perhaps Officer Rinn, Governor Charlie Baker, and the Centers for Disease Control and Prevention, conspired with each other to deprive him of his rights. [Compl. ¶ 75; ECF No. 22 at 6, 11]. At most, the complaint alleges that Filippone and Palladino worked for Whole Foods and that Officer Rinn arrived on the scene after responding to a call placed by Plaintiff. There are no other factual allegations that would suggest that the Defendants had any sort of agreement between themselves or anyone else, let alone an

12

agreement to deprive Plaintiff of his rights. These "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." Alston, 988 F.3d at 578. Accordingly, Count Four is DISMISSED.

###### F. Count Six: Unauthorized Practice of Medicine, Mass. Gen. Laws Ch. 112, § 6

Plaintiff claims that Defendants engaged in the unauthorized practice of medicine because a surgical mask is a medical device. [Compl. ¶¶ 77–79]. He also asserts that Defendants were not qualified to give him a temperature check as part of a health screening before allowing him to enter the store. [Id. ¶¶ 23–25].

Under Massachusetts law,

> whoever, not being lawfully authorized to practice medicine within the commonwealth . . . holds himself out as a practitioner of medicine or practices or attempts to practice medicine in any of its branches, or whoever practices medicine under a false or assumed name or under a name other than that by which he is registered, or whoever personates another practitioner . . . shall be punished by a fine of not less than one hundred nor more than one thousand dollars or by imprisonment for not less than one month nor more than one year, or both.

Mass. Gen. Laws Ch. 112, § 6. Plaintiff has failed to allege that any Defendant held themselves "out as a practitioner of medicine" and has alleged only that they implemented and/or enforced a store policy that required customers to wear a mask while shopping. Aside from his conclusory assertion that masks are medical treatment, there are no allegations that plausibly suggest that Defendants "were practic[ing] or attempt[ing] to practice medicine" by implementing and enforcing the Mask Policy. As one Florida state court recently concluded

> [r]equiring facial coverings to be worn in public is not primarily directed at treating a medical condition of the person wearing the mask/shield. Instead, requiring individuals to cover their nose and mouth while out in public is intended to prevent the transmission from the wearer of the facial covering to others (with a secondary benefit being protection of the mask wearer).

13

Machovec v. Palm Beach Cty., 310 So.3d 941, 946 (Fla. Dist. Ct. App. 2021); Celauro v. Whole Foods Mkt., No. 21-cv-00310, 2021 WL 4844538, at *5 (D. Colo. Oct. 18, 2021) (agreeing with reasoning in Machovec); see also Zinman v. Nova Se. Univ., Inc., No. 21-cv-60723, 2021 WL 4025722, at *17 (S.D. Fla. Aug. 30, 2021) (holding that "one [cannot] plausibly allege that the government is requiring medical treatment by requiring individuals to wear a face mask"), R&R adopted sub nom. Zinman v. Nova Se. Univ., No. 21-cv-60723, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021).  Plaintiff also has not alleged facts that support the plausible inference that taking a temperature as part of the health screening is medical treatment.  He states no facts to suggest that Defendants even took his temperature or used that information to diagnose or medically treat him in any way.  Therefore, Count Six is DISMISSED.

      **G.**     **Count Seven: Civil Harassment**

In Count Seven, Plaintiff alleges that Defendants harassed him, but does not specify the statutory or common law basis for his claim.  [Compl. ¶¶ 80–84].  The Court assumes he intended to bring a claim under the Massachusetts civil harassment statute, Mass. Gen. Laws Ch. 258E.  Under Chapter 258E § 1, harassment is defined, in relevant part, as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damages to property and that does in fact cause fear, intimidation, abuse or damages to property . . . . "  Mass. Gen. Laws ch. 258E, § 1; see also Seney v. Morhy, 3 N.E.3d 577, 580 (2014) (defining harassment).  Setting aside whether this is the proper court in which to raise a claim under Chapter 258E, the complaint does not include any allegations to suggest three distinct acts on the part of Defendants.  Plaintiff describes only one interaction with Defendants on January 4, 2021.  Nor does the complaint contain any facts to show that

Defendants specifically intended to cause fear, intimidation, or abuse by asking Plaintiff to comply with the Mask Policy. Accordingly, Count Seven is DISMISSED.

### H. Count Eight: False Imprisonment

Under Massachusetts law, "[t]he elements of a False Imprisonment claim are: '(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.'" Perna v. Martinez, No. 17-cv-11643, 2021 WL 1210357, at *4 (D. Mass. Mar. 31, 2021) (quoting Noel v. Town of Plymouth, 895 F. Supp. 346, 354 (D. Mass. 1995). The "key factor" for determining confinement is "whether the person is free to leave." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 55 (D. Mass. 2000).

Plaintiff has failed to allege that he was not free to leave at any time during his interaction with Defendants. In his opposition brief, Plaintiff argues that he "was held and questioned by the police prior to being forced to leave the premise on threat of arrest." [ECF No. 22 at 22]. It is undisputed that *Plaintiff* called the police to the scene so any purported threat of arrest by the police fails to support the plausible inference that *Defendants* engaged in conduct that confined Plaintiff in any way. Accordingly, Count Eight is DISMISSED.

### I. Dismissal of Mackey is Appropriate

Finally, even though Mackey has not moved to dismiss, in the interests of judicial economy, the Court dismisses Plaintiff's complaint in its entirety. Although "[s]ua sponte dismissals are strong medicine, and should be dispensed sparingly," Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (quoting Gonzalez-Gonzalez v. United States, 257 F.3d 31, 33 (1st Cir. 2001)), where it is "crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand," id. (quoting Gonzalez-Gonzalez, 257

F.3d at 37). Here, for the reasons stated above, and because the complaint contains no substantive factual allegations regarding Mackey, see [Compl.], the Court finds that sua sponte dismissal is appropriate.

### IV.     CONCLUSION[5]

Accordingly, Defendants' motion to dismiss, [ECF No. 20], is GRANTED. The complaint is dismissed in its entirety.

**SO ORDERED.**

January 21, 2022                                             /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE

---

[5] In closing, the Court cannot help but note the following: despite the myriad of claims brought by Plaintiff, there is no constitutional, statutory, or common law right to jeopardize the health of others by shopping in a Whole Foods, without a mask, in contravention of its prudent policy, during a mass pandemic. If your heart is set on products from a market with a mask requirement and you can't or won't wear a mask, your choices are to get your food delivered, have someone else shop for you, or reconsider wearing a mask for your own health and the good health of the other shoppers.